UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION CASE NUMBER:
25-cv-20097-KMM

JOSEPH C. ZOGHAIB
*Plaintif,*

v.

SOCIETE GENERALE DE BANQUE AU LIBAN,
BANQUE DU LIBAN
*Defendants.*
_____/

FILED BY _____ D.C.
JAN 07 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## COMPLAINT

COMES NOW, Plaintiff, JOSEPH ZOGHAIB (hereinafter "Plaintiff"), brings this action against SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL, and BANQUE DU LIBAN, (hereinafter "Defendants"), and in support thereof alleges as follows:

### PARTIES

1. Plaintiff, JOSEPH ZOGHAIB, is an individual that is domiciled in the state of Florida.

2. Defendant, SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL (SGBL), registered and headquartered in Lebanon

3. Defendant, BANQUE DU LIBAN (BDL), is the central bank of Lebanon. Established as a legal public entity under the Lebanese Code of Currency and Credit, promulgated on August 1, 1963, by Decree No. 13513, Banque du Liban began its operations as Lebanon's central bank on April 1, 1964. The bank's headquarters is located at Masraf Lubnan Street, 1100-5544, Beirut, Lebanon. Banque du Liban (BDL) is registered and headquartered in Lebanon.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. The Court has subject matter of this action against foreign persons under 28 U.S.C. §§ 1332(a)(2) and (d)(2), because Defendant Société Générale de Banque au Liban ("SGBL"), is a foreign company registered in the foreign state of Lebanon.

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1330(a), because Defendant, Banque du Liban ("BDL"), is a foreign state within the meaning of 28 U.S.C. § 1603(a) and (b), and BDL is not entitled to sovereign immunity in this action, including pursuant to 28 U.S.C. § 1605(a).

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1330(a) and 1605(a)(2), which provide an exception to sovereign immunity for actions based on a foreign state's commercial activity. Specifically, Plaintiff alleges that the claims arise from acts performed in connection with a commercial activity of the foreign state that occurred in the United States, or from acts outside the United States in connection with a commercial activity that caused a direct effect within the United States. Accordingly, this action satisfies the requirements of the commercial activity exception, and the foreign state is not entitled to immunity under the Foreign Sovereign Immunities Act.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and both Defendants are subject to personal jurisdiction in this district.

9. This Court has supplemental jurisdiction over all additional claims that do not arise under federal law pursuant to 28 U.S.C. § 1367. Venue is proper in this district because the Plaintiff resides in this district, both the Defendants conduct business within this district, and the cause of action arises from transactions that were entered into, at least in part, and fully performed within this district.

10. This action arises out of business transacted by both Defendants in the United States, and venue is proper under 28 U.S.C. § 1391 and 18 U.S.C. §§ 1965(a) and (b).

11. This Court has jurisdiction over SGBL based on persuasive international precedent that supports asserting jurisdiction over foreign banks. The French Court of Appeals has held that Lebanese banks are subject to French judicial personal jurisdiction, even if they lack a physical presence or branches in France. Jugement du 19 Novembre 2021 - Tribunal Judiciaire de Paris, RG n° 21/10243. Additionally, in *Manoukian v. Bank Societe Generale de Banque au Liban SAL*, the British Court of Appeals provided a relevant common law ruling supporting jurisdiction over Lebanese banks. Manoukian v Societe Generale de Banque au Liban SAL and another, [2022] EWHC 669 (QB) This British ruling is especially persuasive, as U.S. courts frequently look to British common law in determining jurisdictional issues.

## **BACKGROUND**

12. SGBL is a private, for-profit bank registered and headquartered in Lebanon and listed among the approved banking institutions by the Central Bank of Lebanon (BDL), under #9.

13. SGBL issued a cashier's check to the Plaintiff from the Plaintiff's own account at the bank. The check issued by SGBL is a cashier's check drawn on SGBL's account at BDL. Private citizens are not allowed to open accounts at BDL. Only public entities and a few private institutions, such as banks, are permitted to hold accounts at BDL.

14. SGBL is a private company led by a board of directors, with Antoun Sehnaoui serving as chairman, CEO, and majority shareholder. Sehnaoui owns more than 51% of the bank's shares. He is also the owner of Pikes Peak National Bank in Colorado. A Lebanese banker, Sehnaoui graduated from the University of Southern California. He chairs Société Générale de Banque au Liban (SGBL) and its affiliated banks in Cyprus, Jordan, and Abu Dhabi, as well as Compagnie Financière Richelieu and its affiliated banks, Banque Richelieu France and Banque Richelieu Monaco. In 2018, Sehnaoui purchased Pikes Peak National Bank, a community bank in El Paso County, Colorado.

15. BDL, the central bank of Lebanon, played a key role in the financial PONZI scheme that led to the country's banking crisis. In the 1990s, as Lebanon emerged from a civil war, a dual currency system developed using both the U.S. Dollar (USD) and the Lebanese Pound (LBP).

16. To stabilize volatile exchange rates, BDL, under then-Governor Riad Salameh, pegged the LBP to the USD at a fixed rate of 1,507.5 LBP to $1. This move encouraged foreign

currency investments, particularly in USD, making it the dominant deposit currency in Lebanon.

17. Lebanese banks attracted USD deposits by offering high interest rates and sophisticated banking services. However, these rates proved unsustainable. When new deposits slowed, Defendant SGBL faced severe liquidity issues.

18. By 2015, the situation worsened as USD deposits dwindled. Rather than adjust their practices, Defendant BDL, colluding with Defendant SGBL, engaged in "financial engineering" by offering even higher returns to attract fresh USD deposits, particularly targeting U.S. citizens and residents abroad.

19. Despite the growing crisis, both Defendants continued their schemes, concealing the true state of the Lebanese economy while allowing politically connected individuals to offshore their funds. Most of the USD funds were funneled through corrupt politicians to the sanctioned regime in Iran. As the crisis deepened, banks began restricting access to USD deposits, leading to massive financial losses for depositors, including U.S. citizens.

20. By mid-2019, the Lebanese banking system collapsed under the weight of its corruption and mismanagement, with both Defendants resorting to unlawful capital controls and the conversion of depositor funds.

21. The crisis drove widespread protests and led to ongoing investigations into fraudulent practices within the banking sector.

22. The banks, including Defendant SGBL, were protected by Defendant BDL, along with the Lebanese government and judicial system. Trial courts in Lebanon received thousands of lawsuits from depositors. However, their decisions were stayed as Defendant banks

appealed. Upon appeal, trial court decisions became inoperative pending a ruling from the Court of Appeals.

23. The courts of appeal, colluding with the banks, have refused for the past five years to schedule these lawsuits on their dockets. No lawsuit has been successfully concluded because the courts of appeal (in collusion with corrupt government officials) have consistently refused to hear these cases. Justice is unattainable within the Lebanese judicial system—it is impossible.

24. The judicial system in Lebanon effectively denies justice to all Defendants. Some depositors have unsuccessfully resorted to armed force to compel banks to release their deposits.

25. SGBL has refused depositors' requests to issue cashier's checks drawn on their accounts with corresponding banks in New York, specifically New York Mellon Bank and JP Morgan Chase Bank.

26. SGBL has colluded with BDL by issuing cashier's checks drawn only on SGBL's account at BDL. BDL, in turn, refuses to honor the checks and directs holders to resolve the matter with the issuer.

27. SGBL knowingly issued cashier's checks that could not be cashed, having colluded with BDL and other banks to ensure these checks would not be accepted for deposit.

## FACTUAL ALLEGATIONS

28. On or about November 26, 2021, Plaintiff received a cashier's check from Defendant SGBL in the amount of $336,000, made payable to Plaintiff and attached hereto as Exhibit "A."

29. Plaintiff presented the cashier's check to Defendant SGBL for payment on or about April 1, 2024.

30. SGBL dishonored the cashier's check on April 4, 2024, citing: **"FOREIGN REGULATORS PROHIBIT CLEARING OF THE CHECK—PLEASE CONTACT THE PERSON WHO WROTE IT."**

31. Plaintiff is the holder in due course of the cashier's check, having taken it for value, in good faith, and without notice of any defect or claim against it.

32. As a result of SGBL's dishonor of the cashier's check, Plaintiff has suffered significant financial harm, including, but not limited to, homelessness; inability to pay for proper care and therapies for autistic children and other health issues; commercial losses; health issues affecting both Plaintiff and his wife; inability to pay for college education and school fees for Plaintiff's children due to the loss of funds; reputational damage; emotional and physical distress; and additional costs. Plaintiff has also lost numerous commercial opportunities as a result of the loss of his funds.

## COUNT I: BREACH OF CONTRACT

33. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

34. A cashier's check is a form of payment where the issuing bank unconditionally guarantees payment of the specified amount to the payee, thereby creating a binding obligation on the part of the bank.

35. By issuing the cashier's check, SGBL not only created a contract with the Plaintiff to honor the check upon proper presentation but also represented to the Plaintiff that the funds were available and would be paid without delay or condition.

36. Both Defendants breached this contract by dishonoring the cashier's check upon proper presentation by the Plaintiff, despite the Plaintiff's adherence to all terms and conditions associated with the check's negotiation.

37. The Defendants' dishonor of the cashier's check was unjustified and constituted a failure to fulfill their legal and contractual obligations, causing significant harm to the Plaintiff.

38. As a direct and proximate result of the Defendants' breach of contract, Plaintiff has suffered damages, including, but not limited to, the loss of the check's value, additional financial costs incurred, and damage to Plaintiff's financial standing and reputation, all in an amount to be proven at trial.

39. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT II: VIOLATION OF THE UNIFORM COMMERCIAL CODE (HOLDER IN DUE COURSE)

40. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

41. Under Section 673.3021 of the Uniform Commercial Code (UCC), a holder in due course is entitled to enforce the unconditional obligation of the issuing bank to pay the amount specified on the cashier's check upon its presentation.

42. Plaintiff, as a holder in due course, acquired the cashier's check for value, acted in good faith, and had no notice of any defect, claim, or defense against the check at the time it was obtained.

43. Both Defendants' dishonor of the cashier's check not only breached its obligations under the UCC but also undermined the fundamental protections afforded to a holder in due course, who is entitled to rely on the validity and enforceability of the instrument.

44. Defendant SGBL's refusal to honor the cashier's check disregarded Plaintiff's established rights under the UCC and failed to provide any legitimate justification for the dishonor.

45. As a direct and proximate result of both Defendants' wrongful actions, Plaintiff has suffered significant financial harm, including but not limited to the loss of the check's value, additional expenses incurred in seeking enforcement, and consequential damages, all in an amount to be proven at trial.

46. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT III: CONVERSION

47. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

48. Plaintiff had a legal right to the funds represented by the cashier's check, which were to be paid to Plaintiff upon presentation of the check.

49. By dishonoring the cashier's check, both Defendants wrongfully exercised dominion and control over the funds that rightfully belonged to Plaintiff.

50. Both Defendants' actions in refusing to release the funds constituted an unlawful conversion, depriving Plaintiff of their rightful property.

51. Plaintiff did not consent to Defendants' control over the funds, and Defendants' wrongful retention of the funds was done without legal justification.

52. As a direct and proximate result of Defendants' conversion of the funds, Plaintiff has suffered damages, including, but not limited to, the loss of the funds, additional financial costs, and other related damages, in an amount to be proven at trial.

53. Plaintiff is entitled to recover the full amount of the converted funds, along with any consequential and punitive damages as may be appropriate, due to the willful and malicious nature of Defendants' actions.

54. Plaintiff requests that Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

### COUNT IV: UNJUST ENRICHMENT

55. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

56. Plaintiff conferred a benefit upon Defendant SGBL by providing funds for the cashier's check, with the expectation that the check would be honored upon presentation.

57. Defendant SGBL has unjustly retained and benefited from the funds represented by the cashier's check by dishonoring the check and failing to return or release the funds to Plaintiff.

58. Both Defendants' retention of these funds, without providing the payment that was promised and expected, is inequitable and unjust under the circumstances.

59. As a result of Defendants' unjust enrichment, Plaintiff has suffered financial harm, including the loss of funds that rightfully belong to Plaintiff.

60. Equity and good conscience require that Defendant SGBL return the funds to Plaintiff, along with any additional damages necessary to fully compensate Plaintiff for the unjust enrichment.

61. Plaintiff is entitled to restitution in the amount of the funds wrongfully retained by Defendants, as well as any other relief that the Court deems just and proper.

62. Plaintiff requests that Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT V: PROMISSORY ESTOPPEL

63. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

64. Defendant SGBL, through its actions and representations, made a clear and definite promise to Plaintiff that the funds represented by the cashier's check would be honored and paid upon proper presentation.

65. Defendant SGBL reasonably expected that Plaintiff would rely on this promise by maintaining and presenting the cashier's check for payment.

66. Plaintiff reasonably and justifiably relied on Defendant SGBL's promise by accepting the cashier's check, presenting it for payment, and refraining from taking alternative actions to secure the funds.

67. Plaintiff's reliance on Defendant SGBL's promise was to Plaintiff's detriment, as Defendant SGBL dishonored the cashier's check, causing Plaintiff to suffer financial harm.

68. Injustice can only be avoided by enforcing Defendant SGBL's promise to honor the cashier's check or by awarding Plaintiff damages equivalent to the value of the check and any consequential losses.

69. As a direct and proximate result of Plaintiff's reliance on Defendant SGBL's promise, Plaintiff has suffered damages in an amount to be proven at trial.

70. Plaintiff is entitled to enforce the promise made by Defendant SGBL or, in the alternative, to recover damages for the losses sustained due to Plaintiff's reliance on that promise.

71. Plaintiff requests that Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT VI: COMMON LAW FRAUD

72. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 12 through 32 above as if fully repeated and set forth herein.

73. Plaintiff is a depositor with Defendant SGBL.

74. SGBL fraudulently induced Plaintiff to maintain USD deposits by falsely representing that they would have ready access to their funds, including the ability to transfer USD outside of Lebanon.

75. SGBL issued misleading financial statements that inaccurately depicted the stability of its financial condition to depositors.

76. Until at least late 2019, Defendant SGBL assured American depositors that their deposits were secure and could be freely withdrawn or transferred.

77. In reality, the Lebanese banking system was inadequately supported by foreign currency or other sufficient assets, and Defendant SGBL lacked the necessary reserves to meet potential withdrawal demands from depositors.

78. Unbeknownst to Plaintiff, SGBL conspired to hoard USD, deliberately preventing depositors, including Plaintiff, from withdrawing or transferring their USD outside of Lebanon.

79. SGBL failed to disclose to Plaintiff its precarious financial condition and the overall insolvency of the Lebanese banking system.

80. These repeated misrepresentations and omissions by Defendant SGBL were knowingly false at the time they were made.

81. Plaintiff relied on these misrepresentations and omissions to their detriment by continuing to maintain deposits with SGBL.

82. After years of misleading Plaintiff with false assurances regarding its ability and intentions, Defendant SGBL ultimately disclosed that Plaintiff's deposits could not be withdrawn.

83. As a direct and proximate result of SGBL's fraud, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## COUNT VIII: BREACH OF FIDUCIARY DUTY

84. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

85. A fiduciary relationship existed between Plaintiff and Defendant SGBL, wherein Defendant SGBL was entrusted with the responsibility to manage and safeguard the funds represented by the cashier's check.

86. Defendant SGBL breached its fiduciary duty to Plaintiff by dishonoring the cashier's check and failing to protect Plaintiff's interests.

87. As a direct and proximate result of Defendant SGBL's breach of fiduciary duty, Plaintiff has suffered damages in an amount to be proven at trial.

88. Plaintiff requests that Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT IX: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

89. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

90. Every contract, including the one between Plaintiff and Defendant SGBL regarding the cashier's check, includes an implied covenant of good faith and fair dealing.

91. Defendant SGBL breached this covenant by dishonoring the cashier's check without just cause, acting in bad faith, and depriving Plaintiff of the benefits of the contract.

92. As a direct and proximate result of Defendant SGBL's breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial.

93. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT X: DECEPTIVE TRADE PRACTICES/CONSUMER PROTECTION

94. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

95. Defendant SGBL engaged in deceptive trade practices by falsely representing that the cashier's check would be honored, while knowing that it would not be, and by concealing material facts regarding the bank's financial condition and its ability to honor the check.

96. These actions violated state consumer protection laws designed to protect consumers from deceptive and unfair business practices.

97. As a direct and proximate result of Defendant SGBL's deceptive trade practices, Plaintiff has suffered damages, including financial losses, in an amount to be proven at trial.

98. Plaintiff is entitled to recover damages, including statutory damages, attorneys' fees, and any other relief provided under applicable consumer protection statutes.

99. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT XI: EQUITABLE ESTOPPEL

100. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

101. Defendant SGBL made representations and took actions that led Plaintiff to reasonably believe that the cashier's check would be honored.

102. Plaintiff relied on these representations to their detriment by maintaining and presenting the check, expecting the funds to be paid.

103. Defendant SGBL should be equitably estopped from denying the validity of the cashier's check or from refusing to compensate Plaintiff for the loss of the funds.

104. As a direct and proximate result of Defendant SGBL's actions, Plaintiff has suffered damages in an amount to be proven at trial.

105. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

106. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

107. Both defendants' conduct in dishonoring the cashier's check, coupled with false representations and the withholding of funds, was extreme and outrageous.

108. Both defendants acted intentionally or with reckless disregard for the likelihood of causing Plaintiff severe emotional distress.

109. As a result of Defendant SGBL's conduct, Plaintiff has suffered severe emotional distress, including anxiety, stress, and mental anguish.

110. Plaintiff is entitled to recover damages for the emotional distress caused by both defendants' actions, in an amount to be proven at trial.

111. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## COUNT XIII: CONSTRUCTIVE TRUST

112. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

113. Both Defendants' wrongful retention of the funds represented by the cashier's check has resulted in unjust enrichment.

114. Equity and good conscience require that a constructive trust be imposed on the funds retained by both Defendants, to prevent unjust enrichment and to ensure that the Plaintiff is made whole.

115. Plaintiff is entitled to a constructive trust over the funds wrongfully retained by both defendants, along with any additional relief deemed just and proper by the Court.

116. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

### COUNT XIV: PUNITIVE DAMAGES

117. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

118. Both Defendants' actions in dishonoring the cashier's check, making false representations, and withholding funds were willful, malicious, and in reckless disregard of Plaintiff's rights.

119. Both Defendants' conduct was sufficiently egregious to warrant the imposition of punitive damages, to deter such conduct in the future and to punish both defendants for their wrongdoing.

120. Plaintiff is entitled to punitive damages in an amount to be determined at trial, in addition to any compensatory damages awarded.

121. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

### COUNT XV: NEGLIGENCE

122. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

123. Plaintiff brings a negligence claim against SGBL based on its failure to exercise reasonable care in managing and honoring its issued cashier's checks.

124. SGBL, as a banking institution, owed a duty to Plaintiff, its depositor, to act with due diligence in ensuring that funds issued via cashier's checks would be honored and accessible to the payee upon presentation.

125. Given SGBL's role as Plaintiff's bank and the nature of a cashier's check as a secure payment instrument, SGBL owed a duty to handle Plaintiff's funds in a manner that would not expose him to unnecessary risk or harm.

126. SGBL breached its duty of care by knowingly issuing a cashier's check it anticipated would not be honored due to prior collusive arrangements with BDL.

127. This breach is evidenced by SGBL's issuance of the check while colluding with BDL, which subsequently refused to clear the check, citing prohibitions from foreign regulators.

128. By issuing a cashier's check to Plaintiff and subsequently dishonoring it, SGBL breached its duty of care, causing significant foreseeable harm to the Plaintiff.

129. SGBL's breach of duty directly led to Plaintiff's inability to access his funds, resulting in financial harm. The bank's prior knowledge of the check's likely dishonor establishes a direct link between its negligent issuance of the check and Plaintiff's subsequent harm.

130. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

131. Due to SGBL's breach, Plaintiff suffered substantial financial losses, that were foreseeable and flowed directly from SGBL's failure to honor its obligations.

## COUNT XVI: VIOLATION OF INTERNATIONAL BANKING LAWS

132. Plaintiff incorporates by reference the allegations contained in paragraphs 12 through 32 as if fully set forth herein.

133. SGBL breached its duty towards defendant to issue the check to be collected from its corresponding accounts in New York instead of its account at BDL, knowing beforehand that the check will not be cleared. Lebanese law has no currency controls and does not forbid transferring US dollars out of Lebanon, and puts no limit to those transfers.

134. Plaintiff requests that the Defendants be held jointly and severally liable for all damages incurred as a result of their unlawful actions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in its favor and against both Defendants jointly and severally as follows:

a. Awarding Plaintiff damages in an amount to be determined at trial, including compensatory and consequential damages;

b. Awarding Plaintiff pre- and post-judgment interest as allowed by law;

c. Awarding Plaintiff punitive damages: To deter future wrongful conduct by both defendants;

d. Awarding Plaintiff its costs and attorneys' fees incurred in this action; and

e. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 6th, 2025
**Respectfully submitted,**
**JOSEPH ZOGHAIB**
12729 SW 211th STREET
MIAMI, FL 33177
MOBILE: 305-360-4117